CASE 11.—ACTION BY JOHN R. MEADOWS AND OTHERS
AGAINST H. F. FINLEY. May 25, 1909.

# Finley v. Meadows

Appeal from Whitley Circuit Court.

GEORGE P. JOHNSON, Special Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1. Trial—Special Verdict—Sufficiency.—A special verdict is not
   sufficient unless it finds the facts necessary to enable the
   court from the pleadings and the verdict to enter judgment.
2. Trial—Dockets—Transfer of Cause.—Under Civ. Code Prac.
   Sec. 10, providing for transfer of causes on the docket, the
   court may in its discretion, without motion, order the trans-
   fer of an action from the ordinary to the equity docket when
   it appears that such transfer is necessary because of the pe-
   culiar questions involved or because the case involves such
   great detail of facts as to render it impracticable for a jury
   to try the case.
3. Boundaries—Location of Lines.—In locating the lines of a sur-
   vey, courses and distances must give way to marked or es-
   tablished lines or corners found on the ground, and the quan-
   tity called for is entitled to less weight as evidence than
   courses or distances.

J. N. SHARP, E. L. STEPHENS and LINDSAY and EDELEN
for appellants.

## POINTS AND CITATIONS.

1. The whole case was tried out on an issue which did not de-
termine the controversy. The verdict, therefore, did not enable
the court to render judgment. A special finding from which the
judgment does not follow as a logical sequence is equivalent to a
mistrial.

2. By the prayer of the petition a money judgment alone was
sought. Therefore, under section 329 of the Civil Code it was
made the imperative duty of the court to shape the trial so that

that issue alone should be submitted. A verdict which leaves it to the court to call in expert commissioners to calculate the finding and estimate the judgment can not be made the basis of a valid judgment.

3. The verdict required by the instructions was a special one. It was, therefore, beyond the power of the court. The section of the Code authorizing special verdicts was repealed in 1886. Civil Code, Sec. 327.

4. A judgment for an amount in excess of that demanded by the pleadings was unauthorized.

I. N. STEELY and H. H. TYE for appellees.

## QUESTIONS DISCUSSED AND AUTHORITIES CITED.

1. It was not necessary to locate the John V. LeMoyne land.

2. Grounds for rescission alleged by appellant in former suit.

3. The five tracts of land in question were located by a survey made under order of court on motion of appellant in former suit for rescission of the contract, which is the basis of this action.

4. The form of the verdict is not material if it be correct or sustained by sufficient evidence.

5. No cause for reversal is shown by appellant which affects, materially, any of his substantial rights.

6. Appellant does not contend that the verdict returned by the jury is unauthorized under the evidence and instructions.

7. All instructions offered by appellant called for a special verdict from the jury, and hence he can not complain at such a verdict.

8. Unless a party in a civil action offers an instruction covering the point of his objection, he will not be heard upon appeal to complain of an inadequate instruction given by the court. Patterson v. Moss Tie Company, &c., 30 R. 9; L. & N. R. R. Co. v. Roberts, 24 R., 1160; L. & N. R. R. Co. v. Harrod, 24 R. 50.

9. Unless a jury is demanded, right to a trial by jury is waived. Practice Act, Sec. 9.

10. If the verdict and judgment be correct, then the fact that the jury returned a special verdict does not authorize a reversal, and this even though the act authorizing special verdicts has been repealed. Tinsley v. Ross, 15 R. 44.

11. Where defense is made, the plaintiff under a prayer for general relief should recover that to which the evidence shows he is entitled. Civil Code, Sec. 90; Travelers Ins. Co. v. Henderson Cotton Mills, 27 R. 663; Bank of Russellville v. Coke, 20 R. 291.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

On October 17. 1902, John R. Meadows and wife entered into a written contract with H. F. Finley, by which they sold him five surveys of land in Whitley county, Ky., at $8 an acre; he paying them at the time $150 of the purchase money and agreeing to pay the balance as soon as the lands could be surveyed, the number of acres ascertained, and the deed made. On March 2, 1907, they brought this suit against him, in which they charged that the five tracts of land contained in the aggregate 506½ acres, as shown by a survey which had been made, and that they had tendered him a deed pursuant to the survey, which he refused to accept. They prayed judgment against him for $4,052, being the price of the land at $8 an acre subject to a credit of what he had paid; he having in the meantime paid them $1,002, in addition to the $150 paid when the contract was made. Finley filed an answer, in which he denied that the five tracts of land were bounded as described in the petition or contained more than 404.4 acres. The case came on for trial before a jury. There was sharp controversy between the parties as to the proper location of the lines of each of the tracts. The quantity of land in each tract depends upon the proper location of the lines of the survey. Two of the surveys called for 100 acres each, and the other three each called for 50, so that the calls of the patents on these five surveys were in the aggregate for only 350 acres. The plaintiff introduced on the trial a map marked "A," and the defendant a map marked "1"; each showing the location of the first survey as each claimed it should be located. The jury, under the instruc-

tions of the court, returned a special verdict that the tract was located as shown on map A introduced by the plaintiff. The plaintiff introduced on the trial a similar map showing the location of each of the other tracts, and the defendant also filed a similar map as to each tract. The jury in each case found that the land was located as shown on the plaintiff's map. The court thereupon entered a judgment upon the verdict that each of the tracts of land was bounded by lines as called for in the maps introduced by the plaintiff. The court thereupon heard in open court the evidence of two surveyors, and entered a judgment that, it appearing to the satisfaction of the court that the five tracts of land contained in the aggregate and in one connected body 529.70 acres, it was adjudged that the plaintiff recover of the defendant $4,237.68, with the interest, subject to a credit of the sum which the defendant had paid; and from this judgment he appeals.

The thing in controversy between the parties was how much land was embraced in the five surveys in controversy. The defendant conceded that he was liable for what land there was at $8 an acre, but he insisted that there was something over 100 acres less in the five surveys than the plaintiff claimed. The jury did not find a general verdict. They simply found a special verdict that each of the five tracts was located as shown by the map introduced by the plaintiff. These maps did not show how many acres the tract thus located would contain, and so when the verdict was returned the court had nothing before it from which it could ascertain with any accuracy how much land there was. A special verdict is not sufficient unless it finds the facts necessary to enable the court from the pleadings and the verdict

to enter a judgment. In 29 Am. & Eng. Ency. 1029, 1030, the rule is thus stated: ''A special verdict should find all the facts which are necessary to enable the court to determine, by consideration of the pleadings and the verdict alone, which party is by law entitled to judgment, without referring to the evidence. The special verdict should contain facts, and not mere evidence of facts. This is a vital principle regulating the formation of a verdict of this nature. In order to support a judgment it is held that the special verdict must pass upon all the material issues made by the pleadings.'' See, also, to the same effect, Proffatt on Jury Trials, Secs. 436-440.

One of the surveyors testified: That the five tracts formed one boundary of land; that he obtained the outer boundary by comparison of the deeds, patents, and so on, found on file in the suit and used in evidence before the jury; that he found the boundary of the Le Moyne land among some of the papers, and made a calculation from that. The Le Moyne land had to be deducted to ascertain what was contained in the five surveys. Taking into consideration all these means of information, this surveyor came to the conclusion that the five tracts of land contained the quantity set out in the judgment of the court. The other surveyor testified that it was impossible to take the five maps referred to by the jury and ascertain from them how much land the five tracts contained, for the reason that some of the tracts lapped upon others, and that no one could tell from the maps how much the lap was. It is manifest from this proof that the special verdict of the jury is not sufficient to enable the court to enter judgment determining the quantity of land in the five tracts, for one surveyor said it could not be done at all, and the other sur-

veyor undertook to ascertain it as near as he could; but to do this he had to take into consideration the boundary of the Le Moyne land which he found in the papers and the other deeds, patents, etc. To uphold such a proceeding would be to say, in effect, that the case might be submitted to one jury to find upon part of the issues in the case or to find certain facts, and then submitted to another jury or to the court to find other facts necessary for the entry of a judgment. Such a practice cannot be entertained. The jury's verdict must determine the controversy, and if it does not, it settles nothing. By section 10 of the Civil Code of Practice, the court may in its discretion without motion order the transfer of an action from the ordinary to the equity docket when it shall be of opinion that such transfer is necessary because of the peculiar questions involved or because the case involves such great detail of facts as to render it impracticable for a jury to intelligently try the case. In this case the five tracts constitute an irregular polygon, having the Le Moyne land which is not included in them in the center of the polygon. The location of the exterior lines of many of these tracts is disputed, and the location of the interior lines is also disputed. There are so many lines in dispute, and there is such great detail of facts as to render it impracticable for a jury to intelligently try the case. On the return of the case to the circuit court, it will be transferred to the equity docket. The proof which has been taken by the official stenographer on the trial which was had will be taken as the depositions of the witnesses, and either party will be allowed to take such further proof as he may offer, or to re-examine any witness whom he may wish to interrogate further without obtaining a special leave of court. On a final

submission of the case, the court will locate the five surveys and ascertain how much land is embraced in them. In locating a survey all the proof as to the marked lines and corners, the original location of the patent as shown by the original survey and plot, and the quantity of land called for, should be taken into consideration. Course and distance must give way to marked or established lines or corners found on the ground, and the quantity called for is entitled to less weight as evidence than course and distance; but in determining the proper location of a patent all the evidence should be considered by the court, for the object in the end is to ascertain how the survey was in fact located.

Judgment reversed, and cause remanded for further proceedings consistent herewith.