## Asher v. Golden.

(Decided March 25, 1932.)

(As Modified on Denial of Rehearing June 10, 1932.)

MARTIN T. KELLY, R. L. POPE and JOHN S. CARROLL for appellant.

ALLEN PREWITT, J. S. GOLDEN, W. T. DAVIS and N. R. PATTERSON for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

On November 15, 1916, appellant, A. J. Asher, Sr., and appellee, B. B. Golden, entered into a written contract by the terms of which Asher agreed to pay Golden the sum of $250 a month and his expenses for legal services to be rendered by the latter. Golden agreed to devote all his time to the transaction of Asher's legal business except so much as might be necessary to look after cases which he then had as attorney for others pending in court and such other important cases as might come to him.

On April 19, 1927, appellee brought this suit against the appellant to recover $6,000 alleged to be due under the contract. Appellant defended on the ground that the contract sued upon had been terminated by mutual agreement on February 27, 1919, and that he had then paid appellee all that was due him under the contract. The case was transferred to the equity docket over appellant's objection, and his motion to submit to the jury the issue as to whether or not the written contract sued upon had been terminated in February, 1919, was overruled. A special commissioner was appointed to hear proof and make an accounting. He reported that the written contract sued upon had not been terminated in February, 1919, and that the sum of $4,570.17 was due the appellee from the appellant. Exceptions to the commissioner's report were overruled, and judgment was entered for the sum found by the commissioner to be due.

On appeal to this court, the judgment was reversed, and the case remanded, with directions to submit to a

jury the issue as to whether or not the written contract had been terminated in February, 1919. Asher v. Golden, 232 Ky. 1, 22 S. W. (2d) 411. On the trial of the case, that issue was submitted to the jury as directed in the opinion on the former appeal, and the jury returned a verdict to the effect that the written contract had not been terminated in February, 1919, as claimed by appellant. The evidence on the issue submitted, though not so voluminous, was substantially the same as on the first trial. Asher has again appealed.

Numerous grounds are urged for a reversal of the judgment, but they may be summarized as follows: (1) The court erred in limiting the argument to 30 minutes on a side; (2) incompetent evidence was admitted and competent evidence was rejected; and (3) the verdict is flagrantly against the evidence. While many witnesses were heard, their testimony in most instances was brief. Many of them were character witnesses. A number of exhibits were introduced, but most of them had but a remote bearing on the issue to be tried. The issue itself was a simple one.

Fixing the time for argument before a jury is a matter within the sound discretion of the trial judge, and, unless that discretion is palpably abused, the judgment will not be disturbed. In fixing the time to be allowed for argument, the importance of the case, the legal questions involved as shown in the instructions, the extent and character of the testimony, are all elements that must be considered. Miller v. Barnes, 181 Ky. 473, 205 S. W. 549; Southern Express Co. v. Southard, 182 Ky. 492, 206 S. W. 773. Here the instruction of which no complaint is made, submitted a simple issue of fact: Was the written contract terminated by mutual agreement on February 27, 1919? Mr. Golden testified positively that it was not terminated. Mr. Asher testified equally positively that it was terminated on that date, and his testimony was supported to some extent by the testimony of two or three witnesses who claimed they were present when the conversation between appellant and appellee occurred, in which appellant claimed that he notified appellee the written contract was at an end. Letters and other exhibits were introduced which tended to some extent to sustain the different versions of the transaction on February 27, 1919. But the evidence taken as a whole was neither so voluminous nor the facts so complicated as to require an elaborate argument before a jury. Under

the circumstances, the action of the court in limiting the argument to 30 minutes on a side was not an abuse of a sound discretion.

There is no merit in appellant's contention that the verdict is flagrantly against the evidence. There was a direct conflict in the testimony on this point, and, while two witnesses testified they were present on February 27, 1919, when appellant claims he had a conversation with appellee during which it was agreed the written contract should be terminated, and these witnesses supported appellant's version of this conversation, the credibility of the witnesses was a question for the jury to determine, and it was within its province to believe one set of witnesses and to reject the testimony of another set, though numerically greater.

Particular complaint is made of the rejection of the testimony of J. Leon Nuckols. D. W. Bingham testified that he had a conversation with appellee in April, 1919, in regard to continuing a case pending in Leslie circuit court in which appellant was a party, and that appellee then informed him he no longer represented Mr. Asher, but that he would write a letter to Asher and suggest that he should grant a continuance of the case in return for a like courtesy that had been extended by Mr. Bingham at the preceding term of court. Bingham testified that appellee did write a letter to Mr. Asher, and that he (Bingham) gave the letter, sealed, to J. Leon Nuckols, with directions to deliver it to Mr. Asher. The appellee did not categorically deny writing the letter, but he did deny that he told Bingham that he no longer represented appellant. J. Leon Nuckols testified that he received a letter from Bingham addressed to Asher, and that he carried it to Hyden in Leslie county, Ky., where he delivered it. On motion of the appellee, the court subsequently withdrew the testimony of Nuckols from the consideration of the jury. Appellee testified that he might have written the letter, but he had no independent recollection of it. It is urged that the testimony of Nuckols showed that the letter was actually written and carried by him to appellant, and tended to corroborate Bingham's statement. Nuckols did not know who had written the letter nor what were its contents. The testimony of Nuckols at the most established a collateral fact which had but a remote connection with the issue being tried. It only established that Bingham gave to Nuckols

a letter addressed to Asher. That fact threw no light on the conversation that occurred between Bingham and appellee before the letter was written. The testimony was of no probative value, and the court did not err in withdrawing it from the jury.

It is finally urged that much incompetent evidence was admitted for appellee over appellant's objection. This criticism is directed principally to a number of letters that were introduced which tended to show that appellee continued to look after appellant's legal business subsequent to February 27, 1919, and that the extent and character of the work done for appellant were the same as before that date. The purpose of this evidence, of course, was to refute appellant's claim that the written contract was terminated on February 27, 1919. Some of the letters, the admission of which is complained of, were written by appellee to appellant, some by appellant to appellee, and some represented correspondence between appellee and third parties. Most of the letters unquestionably were admissible, but those concerning which any question could be made were not of such consequence that their admission would constitute prejudicial error, even though improper. Approximately thirty letters are filed as exhibits. Nineteen of these were written to Golden by Asher, and four were written to Asher by Golden. All were written subsequent to February 27, 1919, and referred to pending litigation and other matters in which Asher was interested. They tend to show that appellee's employment was general in its nature and they were competent for that purpose. There are four letters written by Golden to third parties, principally attorneys, in which he referred to cases in which Asher was interested; but there are no statements in any of these letters which could possible render their introduction prejudicial. About twenty checks signed by Golden were introduced. Most of them were in payment of court costs and expenses incurred in Asher's behalf and were competent as tending to show the nature and extent of appellee's employment.

We find no error prejudicial to appellant's substantial rights, and the judgment is affirmed.